**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PAUL DUNKEL, *et al.*, on behalf of themselves and all others similarly situated, | ) ) |
| Plaintiffs, | ) ) ) ) |
| v. | ) ) |
| WARRIOR ENERGY SERVICES, INC.; and IPS, INC., | ) ) ) |
| Defendants. | ) ) |

Civil Action No. 2:13-cv-00695

Judge Mark R. Hornak

## **MEMORANDUM OPINION**

### **Mark R. Hornak, United States District Judge**

This is a hybrid collective/class action FLSA/Pennsylvania state minimum wage law case arising from work in the gas fields of our region. The Court has previously written on matters related to this case, including substantial recitations of the underlying facts, so they will not be repeated here.

By prior Order, the Court authorized the mailing of notice of FLSA opt-in procedures to certain current and former employees of the Defendant related to certain of its Pennsylvania operations, and its facility in Decatur, Texas. The opt-in period will soon expire, and the Court directed the parties to meet and confer and to then submit a proposed case management order relating to further pretrial activities, including discovery. Counsel has met to do that, and while many matters relative to such an Order have been agreed upon, not all were, so the Court convened an extensive status conference with counsel in an effort to resolve those open issues. Some were, and some were not, and after consideration of the positions and proposals of each party, the Court will enter the Third Amended Case Management Order ("Order") of this date.

The Court provides this Opinion in order to explain its rulings on some of the disputed matters, and to set out its further expectations of counsel.

Counsel for the Plaintiffs has urged the Court to permit somewhat more limited discovery followed by comparatively prompt summary judgment practice as to the application (or not) of the "Motor Carrier Exemption" to the FLSA in this case, contending that doing it that way would protect the material interests of the parties, would foster fruitful settlement discussions, and would minimize anticipated costs. Counsel for the Defendants, on the other hand, says that unless and until discovery as to a significant portion of the actual/potential claimants occurs, his clients cannot fairly and accurately assess the likelihood or magnitude of liability,[1] something necessary both to defend the case and to be in any position to meaningfully think about (let alone discuss) potential settlement. Defendants also point out that for quite some time now, the Plaintiffs have propounded, and the Defendants have responded to, lots of "paper" discovery (100+ interrogatories and requests for production of documents). Without saying so directly, the Defendants seem to contend that just as they are getting into the discovery they think that they need to both size up and fully litigate or settle the case, the Plaintiffs are urging that discovery now be truncated, when doing so would be inappropriate and would materially prejudice them.[2]

Given the current status of this case, the discovery and proceedings to date, the procedural posture of the proceedings, the complexity of the factual and legal issues resolved and to be resolved, and what the Plaintiffs say may well be the amount in controversy, the Court

---

[1] Which Plaintiffs' counsel says could easily be north of $100,000 per Plaintiff. That would make this a really big case. If, for instance, the liability were $95,000 per Plaintiff, and if as Plaintiffs say there were 400 Plaintiffs in the case, that comes to $38,000,000, before you get to fees and costs. The amount in controversy is one of a number of important factors the Court, and the lawyers, are to keep in mind in addressing discovery issues. Fed. R. Civ. P. 26(b)(2)(C)(iii), 26(g)(1)(B)(iii).

[2] The parties in their own versions of a proposed case management order, ECF Nos. 124-3, 125-3, seemed to ask for what amounts to a "reboot" on discovery at ¶ 1, which the Court initially believed meant that neither party had to respond to currently pending, unanswered discovery, and each party reserved their position as to any challenges to any discovery responses already made. As it turned out, the Court learned at a second status conference that only the second part of that equation was true, and the Third Amended Case Management Order reflects that.

concludes that the Defendants have somewhat the better of the argument, and that further discovery as authorized by the Order is appropriate to permit the parties to prepare and advance their claims and defenses, which will also facilitate meaningful ADR proceedings.

The currently open issues seem to come in several categories: pretty significant (location of depositions), somewhat important (the number of certain discovery requests and dates for amendments to pleadings), rather unusual (what to do if deponents just don't show up as noticed?), and essentially meaningless (must reply briefs to summary judgment motions coming months from now be filed, if at all, in 14 or 20 days?).

As to the identity and location of depositions, the Court will direct that counsel meet and confer (a teleconference or video conference is OK), and come up with a "master list" of all anticipated deponents for both sides. Once that is done, counsel should endeavor to group them by day/series of days to cut down on travel costs for all concerned, and also to determine whether they can be handled by video,[3] and if not, where is the most logical, fair, economical place for those depositions.

As to "in-person" depositions, if they are to occur, they should be done where they are most logical, convenient and cost-effective. While the Defendant is correct in the broader sense that plaintiffs should ordinarily be deposed in the judicial district where an action is pending, that is not necessarily the case here. The nature of the business and operations involved here presumed that crews will move around. While those persons that opt-in as Plaintiffs in a FLSA case are just that, "party plaintiffs" (to use the verbiage of 29 U.S.C. § 216(b)), if they are no longer present here, and there is no reasonable anticipation that they will be returning here in the

---

[3] While the Court appreciates that one or more counsel may believe in good faith that many/all of the depositions absolutely, positively have to be done in person, the Court would note that the Court has previously taken two (2) days of testimony from a central witness in a hotly-contested matter by video from Belfast, Northern Ireland with no issues, and that a document camera can be used to show documents to a deponent in "real time" during a video deposition. It is 2015 after all. Given the world in which we now operate, perhaps at least many (all) of the more repetitive oral depositions here (of, for instance, opt-in Plaintiffs 1 through X and Defendants witnesses 1 through X) can also be done by video from various locations.

3

near future, and it is reasonable to depose them along with other deponents in a single location elsewhere, that may be the "just, speedy, and inexpensive" thing to do.[4] By the same token, such persons are, by statute, "party plaintiffs", so they have some responsibility to participate in the lawsuit that they have joined. The long and short of it is that counsel should apply logic and reason to resolving such locational matters, and any thorny issue as to such matters as to which reasonable minds could differ can be resolved by the Court.

As to the number of "paper" discovery requests, the Court has considered the proposals of each side, and the Order issued this date strikes what is in the Court's judgment the appropriate balance of interests given the nature and context of the case.

The parties have attempted to address the circumstance of a deponent failing to appear for a noticed deposition. As the Court observed at a recent status conference, just not showing up at a deposition is a new concept for the Court, and one not countenanced by the Civil Rules. The Order issued by the Court provides what appears to be a mechanism for the parties to confirm the dates/time/attendance of depositions and deponents that is structured to avoid the incurring of unnecessary costs and preparation. In these regards, the Court would also note that it expects any party or witness of a party in this litigation to show up when and where they are supposed to be, absent extenuating, unavoidable/unexpected circumstances. That is one of the responsibilities of being a party in a federal lawsuit, and it will be enforced here.

---

[4] The Court would note that both sides are represented by highly experienced counsel, who each have considerable resources and a national presence, either directly or via referral relationships. It also strikes the Court that there will be a certain repetitive nature to the questioning at the national depositions of many Plaintiffs (Did you drive big or little trucks? How often? When? To do what?), and even some/many defense witnesses (Did Plaintiffs drive big trucks or little trucks? How often?, etc.). In such circumstances, there is no reason that a lawyer from a location proximate to deponents outside of this district could not be dispatched to take the depositions. That happens all the time in large products liability cases, and there is nothing so challenging about an FLSA case such that it could not be done here. If the right place to do the depositions is, for instance, Dallas, and one or both sides have lawyers (either in their firm or from firms that they customarily affiliate with) in Dallas, those lawyers can do the deposition questioning and defending. No big deal.

4

As to the "date" for the filing of any motions for leave to file amended pleadings, the Court believes that prevailing Circuit law requires that it give rather wide latitude for the filing of such motions. Of course, any such motion may well be met with vigorous opposition if the proposed amendment causes real prejudice to the substantial rights of a party, would result in the avoidable duplication or delay in the disposition of the case, complication or repetition of discovery, or other issues that the law recognizes are properly considered in the grant or denial (or limitation) of any amendment effort. Should such a motion be filed, any opposing party will be given plenty of time to respond, and the Court will then rule on the merits of such motion to amend.

Finally, the Court has in the Order resolved the minor, rather meaningless differences in timelines for the filing of briefs that would be due months from now.

The Court finds and concludes that the Third Amended Case Management Order entered this date complies with the applicable provisions of the Federal Rules of Civil Procedure, does not prejudice the material interests of the parties, is consistent with the nature and context of this civil action, and furthers the just, speedy and inexpensive disposition of this action.

An appropriate Order will be entered.

Mark R. Hornak
United States District Judge

Dated:  June 5, 2015

cc:      All counsel of record